5466.   ATLANTA TERMINAL CO. *v.* JOHNSON.
5467.   SOUTHERN RAILWAY CO. *v.* JOHNSON.

Where there is more than one apparently safe route by which persons may leave a railroad station on foot, a passenger walking from his train, in the absence of notice from the railroad company to use a particular route, is at liberty to use any route which appears to him, acting as a reasonably prudent person, to be intended for such use by passengers; and as to him the railroad company is bound to see that all such routes are reasonably safe and sufficient. Whether the route selected by the passenger is or is not apparently safe to any person exercising ordinary care is a question for the jury.

DECIDED AUGUST 22, 1914.

Action for damages; from city court of Atlanta—Judge H. M. Reid. November 22, 1913.

William Johnson sued the Southern Railway Company and the Atlanta Terminal Company jointly, alleging that the former was a railway corporation and the latter a corporation organized under the general railroad law for the purpose of constructing railroad tracks, depots, and other terminal facilities, and that the defendants had damaged him in the sum of $20,000, by reason of the facts hereafter recited; that on May 20, 1912, he came to the Atlanta Terminal Station, in Atlanta, Georgia, for the purpose of boarding a train of the Southern Railway Company; that he was going to Memphis, Tennessee, and had a veteran's ticket to Macon and back to his home over the line of the said railway; that he inquired at the said terminal station, at about 7 p. m., as to the time of his train, and, ascertaining that it would not leave, for approximately an hour, he left the station for the purpose of visiting a restaurant on the other side of Madison Avenue; that a place called "the plaza," on which is a monument, is a part of the said terminal station and of the stational facilities, and is used by both defendants as an approach to and exit from the trains by those on foot and in vehicles, and forms the main entrance and exit of the station building; that the plaintiff started from the door of the station towards the restaurant which he intended to visit, and walked across the plaza in that direction; that the part of the plaza upon which the monument is situated is approached by three steps, and he ascended these steps and continued across this elevated part of the plaza towards the restaurant; that on the left of the plaza and extending to a lamp-post, near the monument, there was a heavy guard-chain, but beyond the lamp-post there was no chain nor anything whatever to indicate the presence of danger or the need of caution; that he continued to walk on the elevated part of the plaza until he stepped off it to the paved street, a distance of eight feet below; that he had walked up the three steps by which the monument is approached, and just before reaching the street there was another elevation of three or four inches, but nothing to indicate that it was not a safe place to walk, this elevation being a solid piece of stone which appeared to be a step; and that about ten feet beyond the said lamp-post he fell abruptly, a distance of eight feet, to the paved street below; that not only was there nothing to indicate the presence of danger, but the general situation and the fact that the chain above mentioned stopped at the lamp-post gave him assur-

ance that there was no danger; that there was a light on the lamp-post, but it was some fifteen feet from the ground and was very dim. The plaintiff attached to his petition, as an exhibit, two pictures of the monument and plaza, showing that there was an open thorough-fare on the side of the terminal station and on a level with the plaza in front of it; and that there was an exit, unobstructed and open, from the front of the station, across in the direction of Madison Avenue, to the right of the elevated part of the plaza where the monument is situated, by which passengers can reach the level of Madison Avenue by a gradual descent. The picture shows the monument and the lamp-post on the left, apparently directly in front of the station, and also three stone steps ascending from the general plaza level to the level of that part of the plaza which surrounds the monument, and shows a building across Madison Avenue from the monument and in a direct line from the station to the monument, with the sign "Restaurant" thereon, and shows also that the upper part of the ground floor of this building is all that can be seen by one approaching the monument from the direction of the station; thus indicating that the building is on a lower level than that part of the plaza which is occupied by the monument. The plaintiff alleged that he suffered, on account of his fall to the street, various permanent injuries enumerated in the petition, and that the defendants were negligent in maintaining the plaza without a proper wall or railing along the street, and were further negligent in not having the plaza well lighted, and in not making the grounds around the station safe; that the plaintiff was properly upon the premises of the defendants and had all the rights of a passenger, and that he was in the exercise of due care and could not have avoided the said injuries by the use of ordinary care; that at the time of his injury he was 77 years old, and in good health and was earning $50 per month.

In an amendment to the petition it was alleged that at the time the plaintiff was injured it was dark; that there were bright lights at the door of the station building, but none between the station and the monument, and no lights around the monument except those mentioned in the original petition. "Around the monument was dark, and the street into which he fell was very dark. The restaurant which he was approaching had in it bright lights. As a result of the facts herein set forth, there was no way for petitioner to

know or see that he was stepping off into the street. The entire space around the monument, including grass and walk, was intended to be used by persons at the depot. It was impossible for the petitioner, by reason of the facts herein set forth, to know that he was about to step down, or to know that he was in any danger until he fell." It was alleged that the plaintiff lived in a small town in Texas, was not familiar with the plaza or depot, was unfamiliar with large cities, and had not known and could not have known there was any other way for him to leave the depot than the way he started to leave it, and that at the time he was injured thousands of old men, many of them from the country, were passing through this terminal station to attend the veterans' reunion, and the defendants invited all persons, whether experienced in travel or not, to use this terminal.

The Atlanta Terminal Company filed a general demurrer to the petition, and the Southern Railway Company demurred generally and also upon the ground that there was a misjoinder of parties. The court overruled the demurrers, after the amendment above referred to was filed. Each defendant excepted.

*Dorsey, Brewster, Howell & Heyman, McDaniel & Black,* for plaintiffs in error.

*Burton Smith, John W. Crenshaw,* contra.

WADE, J. (After stating the foregoing facts.) In the brief of counsel for the Southern Railway Company there is no reference to the question raised by its demurrer, as to whether there was a misjoinder of parties; and since points not insisted upon in briefs of counsel are to be treated as abandoned, that question need not be dealt with by us. The only question remaining is that raised by the two general demurrers, and all we are to determine, therefore, is whether or not the plaintiff's allegations would warrant a recovery of such damages as he might show.

It is well settled in Georgia that a railroad company must exercise extraordinary diligence to preserve the lives and persons of its passengers while they are being received upon its trains, or being transported therein or discharged therefrom, and is bound to exercise only ordinary diligence in the preservation of the lives, health, and persons of passengers who are awaiting at stations the arrival of trains. See *Georgia, Carolina & Northern Ry. Co.* v. *Brown,* 120 *Ga.* 380, 381; *Southern Ry. Co.* v. *Reeves,* 116 *Ga.* 743;

*Wilkes* v. *W. & A. R. Co.,* 109 *Ga.* 794. See also 2 Hutch. Carr. (3d ed.) 1069, § 941. Carriers of passengers by railroad must provide reasonably safe means of getting to or from their stations and trains, but a railroad or terminal company is only bound to furnish one safe and sufficient exit from trains; and in the absence of knowledge that only one route has been provided by such a company for leaving its trains, and in the absence of any specific notice or instruction from the company to use a particular route, a passenger leaving a train or station on foot is at liberty to make use of any route leading away from it which appears to him, acting as a reasonably prudent man, to be intended or designed for such use by passengers; and, so far as he is concerned, the company is bound to see that all such routes are reasonably safe and sufficient. 2 Hutch. Carr. (3d ed.) § 937, and cases there cited.

Whether a passenger was justified in selecting a particular route, and whether, in attempting to pass over that route, in the condition in which it appeared to him at the time he made the attempt, he was in the exercise of reasonable care, and whether or not the route so selected was itself reasonably safe and sufficient, are all questions of fact for determination by the jury.

*Judgment affirmed. Roan, J., absent.*